ALLEN, J.
It is contended that the demand of the ~ppellees is one of those stale claims not entitled to the countenance of a court of equity; and there is some force in the objection. The appellees have slept upon their rights for a long period after the disability of infancy was removed, and no excuse has been offered for this unreasonable delay. Prior to the act of 1826, no certain and definite period was limited for going into such an account; but in the ~xercise of a *514 sound discretion, arising on the circumstances of each. cage> -j-pg eomqs have refused to decree an account where the transactions have become obscure and involved; or where the representatives would-be sub-to insuperable difficulties, or great, inconvenience in hunting up. testimony; or where, from the loss of vouchers, or death of witnesses, any injury was likely to result; or where, from the relation of parties-to each other, a presumption of satisfaction fairly arises upon the whole ease. But it seems to me none of these obstacles to a fair adjustment of the accounts,, present themselves in this case. Much of the greater part of the demand consisted of a balance ascertained to be in the hands of the executor by the report returned and filed in 1818. It has been increased, by restating the account upon proper principles; by a few items disclosed by the inventory, with which the executor-omitted to charge himself; and by some additional charges, sustained by clear testimony. hTo loss, of vouchers or testimony is averred, no difficulties are. suggested in the way of a fair settlement, and the account was settled with so much facility that no exception has been taken to it. Under such circumstances,, it seems to me that it would be going much farther than the courts have yet done, to hold that the mere; lapse of time in this case should operate as a bar.
But if the parties are entitled to be entertained,, it remains to enquire against whom they should in the first instance seek relief. After such neglect, they cannot complain if they are still further delayed by the operation of that rule of equity which requires the creditor applying to it for aid, to proceed against the estate of the principal before resorting to the sureties. The assets of Thomas King’s estate were fully administered by the first executor, John Lord; it does not appear that any of them went into the hands of Bobinson Lord, his executor, in kind. John Lord, *515 therefore, at his- death, was indebted the whole balance found to be in arrear, and his estate should, in the first instance, be subjected to the claim. The answer of the executor of the surety, prays that the devisees and legatees of John Lord should be made parties. It was proper that they should have been made parties, not only because they were primarily liable, but because, from their connexion with the executor, they would probably be better acquainted with his dealings and transactions than the sureties in his official bond. For, though I do not consider that the lapse of time in this case, under the circumstances disclosed by the record, should operate as a bar to the recovery of the appellees, still the great delay which has occurred excites suspicion. The claimants cannot object to the strictest scrutiny, or that every opportunity should be afforded to those most immediately interested in contesting the matter, to prove an actual payment, or to strengthen the presumption of satisfaction. John Lord’s estate was divided and distributed among his devisees and legatees, in 1815;’ and from the report of the commissioners, it plainly appears that there were assets sufficient to discharge the balance due to King’s estate. This fund should have been applied to the payment of the debt, and they who received it are responsible for the amount to King’s legatees. Robinson Lord, the executor of John Lord, committed a devastavit, by permitting the distribution of the personal estate among the legatees, instead of applying it to the discharge of the debt due from his testator to King’s estate. From the commissioner’s report it seems that no assets of Robinson Lord came to the hands of his administrator. But one of the sureties for him as executor of John Lord is shewn to be solvent. If the debt cannot be made from those who have received John Lord’s estate, the sureties of Robinson Lord should be charged, and the burthen *516 should not he thrown on the appellant until the at^emp^. -j-0 procure satisfaction from those first chargeable shall prove unavailing. The case of Dabney’s adm’r al. v. Smith’s legatees, 5 Leigh, 13, was different from the present case. There it appeared very clearly that no assets had come to the hands of the personal representatives of Claiborne the sheriff, or of Dabney the deputy who actually administered Smith’s estate, and no account of the administration of those estates was required. Still the court decreed against their personal representatives, and did not subject the sureties until after an execution was returned no assets. It was contended that the plaintiffs should have proceeded to have the accounts of the administrators of Claiborne and Dabney settled, in order to a decree against them personally if a devastavit should be established. Judge Tucker, in his opinion, with which the other judges concurred, remarks, “ This would indeed be to impose too onerous terms on the creditor. He ought not to be delayed in his recovery until he has pursued the personal representatives of the principal to the utmost limit of litigation.” In that case, it nowhere appears that the personal representatives of Claiborne or Dabney, or their sureties, could be presumed, from their connexion with the parties, to have any particular knowledge of the transactions in relation to Smith’s estate. Ho assets were shewn to have come to the hands of the administrators, and it would therefore have subjected the creditor to an unnecessary delay, to send him upon a pursuit which in all probability would have been unavailing. But in this case, the persons holding the estate of John Lord are his immediate legatees, most probably acquainted with all his transactions, and therefore the best qualified to litigate this claim; and it appears that they had received enough of the estate of John Lord to satisfy the debt. I think, therefore, the *517 court erred in decreeing against the appellant, before the parties in possession of John Lord’s estate, and the sureties of Robinson Lord as executor, had been brought before the court, and an effort made to collect from them any balance which the appellees should shew themselves to be entitled to; and that for this cause the decree must be reversed, and the. cause remanded, with leave to make the legatees of John Lord, and the sureties of his executor, parties defendants.
Tucker, P.
It was said (and, I think, truly) in the case of Dabney’s adm’r & al. v. Smith’s legatees, 5 Leigh, 18, that where a creditor, instead of proceeding at law against the sureties in the executor’s bond, institutes his suit in equity against them and their principal, he is bound to submit to the rule of equity, which will * first decree against the principal, and subject the sureties only in the event of that decree being unavailing. It is natural justice that the debt should be paid out ' of the estate of the debtor; and in equity the creditor ought to resort to it in the .first instance, where that resort will be attended by no material injury or delay. It would seem to follow, that where the principal is dead, and his estate is in the hands of his personal representative, it ought to be pursued, and he and his sureties ought to be first charged, unless there are circumstances in the case which would render the pursuit unreasonably onerous to the creditor. In the case of Dabney’s adm’r & al. v. Smith’s legatees, the decree rendered against the sureties was affirmed, because it appeared that Claiborne the committee administrator was insolvent at the-time of his death, as also was Dabney his deputy, who in fact conducted the administration. It was contended that Claiborne had some land in Ohio, and that the plaintiffs should first resort to'that land. This court thought otherwise, for'reasons assigned by them. It may be added to those *518 reasons, that there can be no obligation on the credi- ^ pursue the heirs, instead of the sureties who have guarantied the due administration of that fund which he has a right to resort to for payment. As to the sureties of Dabney, though they certainly were ultimately responsible, yet it would have been going far to say that the creditor should be bound to look to them, with whom he had no privity, instead of chaining the surety of the administrator himself. Dabney indeed was substituted by Claiborne to the administration ; but the creditor had nothing to do with that substitution; and though it is true that the deputy and his sureties would have been responsible, if the creditor found it necessary to pursue them, yet it could not be reasonable to require him to do so, instead of taking his decree against the solvent sureties of the administrator himself. I think therefore, upon a review of the case, that it was properly decided.
How is this case? First, is the surety of John Lord responsible at all? Secondly, if he be, should he be charged in the first instance ? I answer the first question in the affirmative, and the second in the negative.
That the surety of John Lord.is responsible, admits, in my mind, of no doubt. Lord died indebted to King’s estate to a considerable amount. He had, it is true, been guilty of no wrong in not paying over that amount to the legatees, because their tender years forbade it. But when his executor failed and refused to pay the debt, the condition of the bond was violated, and by one who, by his appointment, represented both himself and his testator. For this breach the surety of John Lord is responsible.
But, secondly, he ought not to be held responsible in the first instance. Robinson Lord, the executor of John, received assets amply sufficient to discharge the debt to King’s estate. The assets thus received should be first applied to the payment of that debt; they be *519 ing estate of the principal obligor, which ought to be charged in preference to the surety. Had Eobinson Lord been living and solvent, this would have been ■obvious.' But he died insolvent, after having wasted the estate, partly by distributing it to the legatees of s John Lord. The sureties of Eobinson Lord are responsible for this devastavit, and they should have been ■charged before the surety of John Lord; for the wrong ■done has been the wrong of their principal, and not of Aylett’s principal. I think, therefore, that the plaintiffs in this case, instead of dismissing their bill against -them, should have - pursued them; and the rather, as, After their long delay in prosecuting their suit, they have little reason to complain of those difficulties which time may have thrown in their way.
I am, moreover, of opinion, that if upon settling the account of Eobinson Lord, as executor of John Lord, there should appear to be in the hands of the executor, over and above the amount distributed by him, assets sufficient to discharge the plaintiffs’ demand, a decree for the amount of that demand should be rendered against Eobinson Lord’s sureties, who should be again made parties in the cause: if otherwise, then the plaintiffs should proceed against John Lord’s distributees for satisfaction; on failure whereof, and not till then, they will be entitled to a decree against the surety of ■John Lord.
The decree of the Court of Appeals was as follows:
“The courtis of opinion that the decree of the Circuit Court is erroneous, in decreeing against the appellant before the parties in possession of John Lord’s estate, and the sureties of Eobinson Lord, as executor, had been brought before the court, and an effort made to collect from them any balance which the appellees should shew themselves to be entitled to. Therefore,” DECREE REVERSED WITH COSTS. AND CAUSE REMANDED TO *520 Circuit Court, “with directions to make the legaTEEg^ AND sureties OE THE EXECUTOR, OE THE SAID JOHN Lord, parties defendants, and to be further proCEEDED IN PURSUANT TO THE PRINCIPLES OE -THE EOREGOING OPINION AND DECREE.”